NOT FOR PUBLICATION

(Civ. No. 08-0146, Doc. No. 8)
(Civ. No. 08-0330, Doc. Nos. 6 & 7)
(Civ. No. 08-1271, Doc. No. 6)
(Civ. No. 08-2947, Doc. Nos. 6 & 7)
(Civ. No. 08-3526, Doc. Nos. 6 & 7)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| IN RE: BAYSIDE PRISON LITIGATION | Civil No.   08-0146 (RBK/JS) |
| (Kenneth Watford, George Alvarez, John | 08-0330 (RBK/JS) |
| Marchetti, Lawrence Brown, John Riley) | 08-1271 (RBK/JS) |
| | 08-2947 (RBK/JS) |
| | 08-3526 (RBK/JS) |
| | |
| | **OPINION** |

**KUGLER**, United States District Judge:

This matter arises out of abuses against prisoners by prison officials at Bayside State Prison in 1997. Presently before the Court are five motions by Defendants to modify the Opinion/Report of the Special Master in five similarly situated cases where the individual plaintiffs were unable to identify their attackers: 1) Civ. No. 08-0146, Doc. No. 8; 2) Civ. No. 08-0330, Doc. No. 6; 3) Civ. No. 08-1271, Doc. No. 6; 4) Civ. No. 08-2947, Doc. No. 6; and 5) Civ. No. 08-3526, Doc. No. 6. In three of these cases, the individual Plaintiffs filed opposing motions to modify the Special Master's Opinion/Report: 1) Civ. No. 08-0330, Doc. No. 7; 2) Civ. No. 08-2947, Doc. No. 7; and 3) Civ. No. 08-3526, Doc. No. 7. For the reasons discussed below, Defendants' Motions are granted and Plaintiffs' Motions are denied. The Court further shall enter judgment in each case consistent with this Opinion.

1

I.      BACKGROUND

In July 1997, an inmate murdered a corrections officer at Bayside State Prison.  The murder was followed by a "lockdown" of the prison, wherein the Department of Corrections ordered in the Special Operations Group ("SOG") to assist the regular staff.  The SOG were corrections officers from other state facilities who were specially trained.  The inmates alleged that during the approximately thirty day lockdown, the Bayside corrections officers and SOG officers used excessive force in the course of prison operations.  The plaintiffs also alleged that various supervisory officials were also liable for the abuses.

Because of the sheer volume of litigants in this dispute, the individual proceedings have been conducted before Special Master Hon. John Bissell pursuant to agreement of the parties under Federal Rule of Civil Procedure 53.  See Civ. No. 97-5127, Doc. No. 958.  Under the Special Master Agreement, all findings of fact by the Special Master are binding, but all conclusions of law may be reviewed de novo by this Court.  See Civ. No. 97-5127, Doc. No. 958 at ¶ 8; Civ. No. 97-5127, Doc. No. 958-1 at ¶ 4; Fed. R. Civ. P. 53(f)(3), (4).  Each of the Plaintiffs presently before the Court (Kenneth Watford, George Alvarez, John Marchetti, Lawrence Brown, and John Riley) individually agreed to the above terms.  See, e.g., Civ. No. 08-0146, Doc. No. 2.

The precise factual findings in each of the Plaintiffs' individual cases vary, but at least one common theme emerges that renders these five particular cases conducive to a joint opinion: Special Master Bissell found that each Plaintiff was entitled to damages (compensatory for each, punitives for some), but found that none of them identified the particular Defendant(s) responsible for the respective attacks.  In addition, judgment as to supervisor liability in each

case was dependant upon Special Master Bissell's universal opinion on the matter, which he issued on March 29, 2010 (the "Supervisor Opinion").  See Civ. No. 97-5127, Doc. No. 1122.  In the Supervisor Opinion, Special Master Bissell found that Defendants William Fauver (Commissioner of the New Jersey Department of Corrections), Gary Hilton (Deputy Commissioner), and Scott Faunce (Chief Administrator of Bayside) (collectively, the "Supervisor Defendants"), bear supervisor liability for claims proven before Special Master Bissell for the period of July 30, 1997 through September 3, 1997, but do not bear liability for any punitive damages.  See Civ. No. 97-5127, Doc. No. 1122 at 24.  Special Master Bissell also determined that Lt. Donald Coughlan of the SOG did not bear supervisor liability.  See Civ. No. 97-5127, Doc. No. 1122 at 2-3.

At this juncture, a recounting of the factual findings and particular motions in each of the five present cases will complete the necessary background.

### A.    Kenneth Watford, Civ. No. 08-0146

Regarding Kenny Watford, Special Master Bissell entered his opinion and report on May 12, 2008 and found as follows.  See Civ. No. 08-0146, Doc. No. 7.  Watford was an occupant of Trailer Two at the time of the lockdown.  Watford was a "trailer rep," which meant that he was appointed by prison officers to bring issues that the Trailer Two inmate population had to the administration's attention.  Seemingly in that capacity, around August 2, 1997, he approached a sergeant to complain that the prisoners were not permitted to contact their families because of the lockdown and to complain that their rights were being violated.  Several minutes later, six SOG officers, one of whom was bearing a dog, came to the trailer.  The sergeant had Watford step out on the step of the trailer, where Watford heard him complain to the SOG leader that Watford was

complaining about privileges.  The men then pulled Watford off the step and rammed his head against the outside wall of the trailer and started beating and kicking him.  The entire time he was on his knees with his face to the trailer, thus the blows were generally to his back.  He was not sure how many of the six participated in the beating.  Near the end of the five or six minute attack, the officer with the dog brought it near Watford's face, close enough that it salivated on him.  The dog was barking the entire time.  As a result of the attack, Watford suffered knee, back, and face pain.

On the basis of the credible evidence, Special Master Bissell found that the officers had used excessive force in violation of Watford's civil rights.  Special Master Bissell awarded $8000 in compensatory damages and $20,000 in punitive damages.  He did not, however, find which Defendant(s) participated in the attack.

On May 31, 2010, Defendants moved to modify the Special Master Opinion/Report of May 12, 2008 to strike the award of punitive damages.  See Civ. No. 08-0146, Doc. No. 8 at 2. Defendants assert that since the Special Master did not find any individual liability, only the Supervisor Defendants could be liable.  However, because of the finding in the Supervisor Opinion that they only bear liability for compensatory damages, Defendants urge that the recommendation of $20,000 in punitive damages be stricken.  See Civ. No. 08-0146, Doc. No. 8 at 2.  Defendants' Motion is unopposed.

**B.    George Alvarez, Civ. No. 08-0330**

Regarding George Alvarez, Special Master Bissell entered his opinion and report on November 12, 2009 and found as follows.  See Civ. No. 08-0330, Doc. No. 5.  On August 2, 1997, SOG officers marched into Trailer Number Three, where Alvarez was housed, yelling at

4

the inmates to put their faces in their pillows, while banging their night sticks on the wall. Their purpose was seemingly to clear the trailer for the transportation of the inmates to the gym. Alvarez was sitting on his bed when the officers entered, and he was then hit in the face to force his compliance with the order. That group of SOG officers then left the area and were followed by a new group that ordered the inmates to get onto the floor. Alvarez was grabbed off of his bed and shoved onto the ground where he was then kicked. The second group of SOG officers then marched off, only to be followed by the original group, which then began yelling at the prisoners for not being on their beds as ordered. At that point, Alvarez was hit with sticks, punched, and kicked, including punches to the ribs and kicks to the head, while he was on the ground. Special Master Bissell found that these actions were not for a penalogical purpose, but to intentionally put the inmates in situations where they could be attacked for failing to follow orders. The mistreatment continued.

After these first three attacks, Alvarez was then ordered to remove his clothes, whereupon he was handcuffed and shoved out of his cell. Alvarez was shoved into another SOG officer who then hit him, claiming that Alvarez attacked him. That officer then shoved Alvarez into another officer, who stated the same thing and responded in kind. Alvarez was passed and attacked in this fashion for some time. Eventually Alvarez reached the gate of Trailer Three, where another officer grabbed him and threw him against a fence to interrogate him about which gang he was in. When Alvarez responded that he was not in a gang, the officer hit him in the ribs and shoved him. Another officer also participated in the attack and questioning.

On the basis of the credible evidence, Special Master Bissell found that the officers had used excessive force in violation of Alvarez's civil rights. Special Master Bissell awarded $4500

in compensatory damages and $9000 in punitive damages.  He did not, however, find which Defendant(s) participated in the attack.

On May 31, 2010, Defendants moved to modify the Special Master Opinion/Report of November 12, 2009 to strike the award of punitive damages.  See Civ. No. 08-0330, Doc. No. 6.  Defendants assert that since the Special Master did not find any individual liability, only the Supervisor Defendants could be liable.  However, because the Supervisor Defendants only bear liability for compensatory damages under the Supervisor Opinion, Defendants urge that the recommendation of $9000 in punitive damages be stricken.  See Civ. No. 08-0330, Doc. No. 6 at 2.

On June 1, 2010, Alvarez filed his own motion to modify the Special Master Opinion/Report.  See Civ. No. 08-0330, Doc. No. 7.  He argues that judgment should have been entered against Lt. Coughlan, who in another case, admitted that he was the officer in charge of the removal of inmates from Trailer Three.  Alvarez insists that Special Master's omission of a finding against Coughlan was "an oversight."  See Civ. No. 08-0330, Doc. No. 7 at 2.  He further insists that he is not attempting to hold Coughlan liable as a supervisor, but as a direct participant in the violation.  See Civ. 08-0330, Doc. No. 7 at 2.  Defendants oppose the motion, arguing that Alvarez is attempting to supplant the factual findings of Special Master Bissell, which is impermissible under the Special Master Agreement.  See Civ. No. 08-0330, Doc. No. 8 at 5.

### C.    John Marchetti, Civ. No. 08-1271

Regarding John Marchetti, Special Master Bissell entered his opinion and report on October 28, 2009 and found as follows.  See Civ. No. 08-1271, Doc. No. 5.  Marchetti was living in D Unit at the time his unit was removed to the gym by SOG officers on August 11, 1997.  On

that date, after his unit arrived at the gym, the inmates were told to sit and keep their heads facing the ground.  A sergeant started yelling that he was looking for somebody, but because of Marchetti's hearing loss, noise in the room, and the air conditioners, he could not hear who the sergeant was looking for.  Marchetti asked an officer standing behind him who they were looking for, and he was told to sit there and shut up.  The sergeant then said that they were going to call the inmates individually and that they were to stand up upon hearing their name called.  When Marchetti heard his name, he stood up and some officers approached him to ask if he had a cane in his room.  When he replied yes, they asked why he didn't stand up before when they were looking for him, and he said he couldn't hear.  The officers then told him to follow them, whereupon they led him to the weight cage.

At the weight cage, the officers told Marchetti to kneel on the floor and to put his face against the mesh such that he was leaning against the cage with his face bearing his body weight. Marchetti was not sure how many officers were present at the cage, but testified that it was at least five.  The officer to his left put on a glove that Marchetti believed to be lead-lined, based on a similar glove he had seen at a friend's house.  With the glove on, the officer asked which ear was Marchetti's bad ear, and when he replied the left one, the officer smacked him on it.  After he asked Marchetti how he lost his hearing, he then smacked him in the ear again.  The officer then began suggesting it was the result of a sexual assault, seemingly intending to degrade Marchetti.  While in this kneeling position, Marchetti estimated that he was hit at least five times in the ear.  He eventually felt a pop in his neck or ear, and became light-headed and dizzy.  Later a senior officer arrived and asked Marchetti why his ear was all red.  Marchetti responded by saying it had always been that way, to which the officer replied that he must have been teased as

7

a kid.  The officer then asked what kind of names he was called, and Marchetti made one up:

Rudolph the red-eared reindeer.  The officers then all laughed and walked away, but later forced

him to retell the name to other officers.

On the basis of the credible evidence, Special Master Bissell found that the officers had

used excessive force in violation of Marchetti's civil rights.  Special Master Bissell awarded

$5000 in compensatory damages and $10,000 in punitive damages.  He did not, however, find

which Defendant(s) participated in the attack.  In fact, as to Marchetti, Special Master Bissell

remarked, "I realize . . . that the perpetrators here at least as this point remain unidentified, which

will probably remain the case."  See Civ. No. 08-1271, Doc. No. 5 at 18:5-7.

On May 31, 2010, Defendants moved to modify the Special Master Opinion/Report of

October 28, 2009 to strike the award of punitive damages.  See Civ. No. 08-1271, Doc. No. 6.

As argued in the matters described above, Defendants again assert that since the Special Master

did not find any individual liability, only the Supervisor Defendants could be liable, and they

only bear liability for compensatory damages under the Supervisor Opinion.  Defendants thus

urge that the recommendation of $10,000 in punitive damages be stricken.  See Civ. No. 08-

1271, Doc. No. 6 at 2.  Defendants' Motion is unopposed.

### D.    Lawrence Brown, Civ. No. 08-2947

Regarding Lawrence Brown, Special Master Bissell entered his opinion and report on

October 3, 2008 and found as follows.  See Civ. No. 08-2947, Doc. No. 5.  Brown arrived at

Bayside on September 23, 1997.  The SOG unit was no longer in place at that time.  Brown

previously been at Garden State Youth Correctional Facility, but was transferred to Bayside

because of a fight.  He was assigned to B or "Baker" Unit.  Upon arrival, the officers present

asked what he was there for, and Brown refused to answer.  One of the officers said that Brown

was there for beating up "a white guy," and said that Brown had an assault charge.  The two

officers then entered his cell and proceeded to attack Brown, or in his words, "to rough me up."

See Civ. No. 08-2947, Doc. No. 5 at 5:14.  He was in handcuffs the entire time.  During the

attack, Brown hit his shoulder against the bed, which caused permanent discomfort.

On the basis of the credible evidence, Special Master Bissell found that the officers had

used excessive force in violation of Brown's civil rights.  Special Master Bissell awarded $7500

in compensatory damages, but no punitive damages.  Special Master Bissell did not, however,

find which Defendant(s) participated in the attack.  Notably, Brown testified that he did not know

the names of the officers that attacked him.  See Civ. No. 08-2947, Doc. No. 5 at 4-5:24-25, 1.

He testified that none of them had name tags on.  See Civ. No. 08-2947, Doc. No. 5 at 8:3-4.

On June 1, 2010, Defendants moved to modify the Special Master Opinion/Report of

October 3, 2008 to dismiss the award of compensatory damages.  See Civ. No. 08-2947, Doc.

No. 6.  Defendants insist that because Brown did not identify his attackers and because Special

Master Bissell did not find any individual responsible for the attack, liability can only attach to

the Supervisor Defendants.  From there, Defendants argue that because Special Master Bissell

found that the Supervisor Defendants were only liable for events occurring between July 30,

1997, and September 3, 1997, and because Brown's injuries occurred on September 23, 1997 –

well after the cut-off date for liability – the Court should dismiss the Special Master's award.

See Civ. No. 08-2947, Doc. No. 6 at 2-3.

Also on June 1, 2010, Brown filed an opposing motion to modify the Opinion/Report of

October 3, 2008.  See Civ. No. 08-2947, Doc. No. 7.  Brown argues that although Special Master

9

Bissell did not make a finding as to the identity of the attackers, and although he himself could not identify them, Special Master Bissell had before him records identifying the housing officers and the officers generally who had control over Brown – though it seems as if those records were entered in the course of other proceedings and not in Brown's.  <u>See</u> Civ. No. 08-2947, Doc. No. 7 at 2.  Brown notes that the Baker Unit Log show that Officers Whildin and Plummer were on duty on the shift when Brown was attacked, and that the Transport Log shows that Plummer transported Brown.  <u>See</u> Civ. No. 08-2947, Doc. No. 7 at 3-4.  He insists that on the basis of these records, the Court should find Whildin and Plummer liable.  <u>See</u> Civ. No. 08-2947, Doc. No. 7 at 4.  Defendants respond that Plaintiffs seek review of the facts and to supplement the evidentiary record, which is not permitted under the Special Master Agreement.  <u>See</u> Civ. No. 08-2947, Doc. No. 8 at 3-4.

       **E.**        **John Riley, Civ. No. 08-3526**

Regarding John Riley, Special Master Bissell entered his opinion and report on December 12, 2008 and found as follows.  <u>See</u> Civ. No. 08-3526, Doc. No. 4.  Riley was housed in Barracks Five on the Farm at Bayside State Prison, which was a full minimum security area of the Prison. At the time, Riley was awaiting parole on August 27, 1997.  However, sometime between August 15 and August 27 he became another victim of the SOG officers.  In relevant part, Riley was in the shower when he heard a commotion.  The source of the commotion was SOG officers who were beating their shields and screaming.  SOG officers entered the shower area and ordered everyone to get down.  As Riley was stepping out of his shower, one of the officers grabbed him by the shoulder and pulled him out, where, because of the slippery conditions, Riley fell to the ground in a "push-up position."  <u>See</u> Civ. No. 08-3526, Doc. No. 4 at 9:1-2.  The officer

10

commanded Riley to not look at him and then stomped his boot onto the back of Riley's head, breaking his nose against the floor.

On the basis of the credible evidence, Special Master Bissell found that the officers had used excessive force in violation of Riley's civil rights.  Special Master Bissell awarded $8000 in compensatory damages and $20,000 in punitive damages.  He did not, however, find which Defendant(s) participated in the attack.

On June 1, 2010, Defendants moved to modify the Special Master Opinion/Report of December 12, 2008 to strike the award of punitive damages.  See Civ. No. 08-3526, Doc. No. 6. As is by now a familiar refrain, Defendants argue that because the Special Master did not find any individual liable, and because the Supervisor Defendants are not liable for punitive damages, the punitive damages award must be stricken.  See Civ. No. 08-3526, Doc. No. 6 at 2.

On June 1, 2010, Riley filed an opposing motion to modify the Special Master Opinion/Report of December 12, 2008.  See Civ. No. 08-3526, Doc. No. 7.  Riley urges not only modification of that Report, but also the Supervisor Opinion.  In particular, he urges that Lt. Donald Coughlan should bear supervisor liability because he "re-enforced, ratified and encouraged" the SOG's behavior and because he persistently overcame the local administrator's orders to not send SOG officers to the Farm.  See Civ. No. 08-3526, Doc. No. 7 at 4.  Defendants oppose Riley's Motion, arguing that he is asking this Court to review the factual findings of Special Master Bissell, in contravention of the Special Master Agreement.  See Civ. No. 08-3526, Doc. No. 8 at 2-3.  They further argue that Riley failed to present evidence to support liability in the course of his proceeding, and argue that Riley is raising liability arguments here that were not previously posed to the Special Master.  See Civ. No. 08-3526, Doc. No. 8 at 4-5.

11

II.     **DISCUSSION**

Disposition of the present Motions is made somewhat unnecessarily challenging by the utter paucity of legal authority cited by the parties in their respective papers.  In fact, none of the them cited to even a single case in support of their respective positions, and thus the Court is left to navigate the waters of this controversy on its own.  Nevertheless, upon review of the relevant precedent and Federal Rule of Civil Procedure 53, the Court is convinced that Defendants' Motions should be granted and Plaintiffs' Motions should be denied.

As noted above, each of the present disputes shares at least one common thread: Special Master Bissell found that each Plaintiff was entitled to damages, but found that none of them identified the particular Defendant(s) responsible for the respective attacks.  This failure to identify is fatal to most of the damages claims.  For example, in Anela v. City of Wildwood, 790 F.2d 1063, 1067-68 (3d Cir. 1986), the Third Circuit held that a 42 U.S.C. § 1983 claim by a group of arrestee-plaintiffs failed where the plaintiffs failed to produce sufficient evidence to identify the specific police officers responsible for detaining and confining them.  The plaintiffs claimed that the police violated their right to equal protection after their arrest at a party by permitting the only male arrestee to be released on bond while the female arrestees were held overnight.  Id. at 1064-65.  The plaintiffs could not, however, identify which of the defendants participated in the allegedly unconstitutional booking and lock-up.  Id. at 1065.  The trial court granted a directed verdict at the close of plaintiffs' evidence.  Id. at 1064.

The Third Circuit affirmed the verdict.  It first noted that § 1983 liability cannot attach merely because a party is a member of a  group in which some of the members are guilty of abuses.  Id. at 1068 (citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)).  As to the particular

12

plaintiffs in <u>Anela</u>, the court found insufficient evidence to put the alleged constitutional

violation to a jury where the only evidence was police log sheets that showed that six individual

defendants were on duty, but where the evidence showed that two of the officers did not

participate in the plaintiffs' booking, it showed that two of the defendants were civilians who did

not participate in the booking; and as to the remaining defendants, the logs did not identify where

they were on duty and in what capacity.  <u>Id.</u> at 1068.  Another panel of the Third Circuit

interpreted <u>Anela</u> to stand for the proposition that a plaintiff is required to prove that "the specific

named defendants personally harmed [the plaintiff] in order to prevail at trial[.]"  <u>See</u> <u>District</u>

<u>Council 47, Am. Fed'n of State, County & Mun. Employees, AFL-CIO by Cronin v. Bradley</u>,

795 F.2d 310, 315 (3d Cir. 1986).

 The holding from <u>Anela</u> that a plaintiff must be able to specifically identify the party that

harmed him in order to prevail on a constitutional violation claim is a well-settled principle.  <u>See</u>

<u>Sharrar v. Felsing</u>, 128 F.3d 810, 821 (3d Cir. 1997) (affirming summary judgment where

plaintiff-arrestee could not identify which police officers were in police car at time of alleged

abuse, noting there was "no evidentiary basis on which to hold [the] defendants liable"),

<u>abrogated on other grounds by</u> <u>Curley v. Klem</u>, 499 F.3d 199 (3d Cir. 2007); <u>Williams v. Brown</u>,

Civ. No. 05-5087 (JAP), 2006 WL 1722627, at *1 n.6 (D.N.J. June 22, 2006) (holding plaintiff's

§ 1983 claim, to the extent he made one, that unnamed corrections officer failed to provide him

with medical treatment was insufficient because it failed to identify the officer who allegedly

violated his rights (citing <u>Anela</u>)); <u>Seward v. City of Philadelphia</u>, No. Civ. A. 00-3563, 2002

WL 563580, at *2-3 (E.D. Pa. Apr. 11, 2002) (granting summary judgment where plaintiff failed

to identify which officers allegedly entered her home and pointed guns at her, noting "the law

requires that plaintiff be able to identify those officers against whom she wishes to bring suit");
Hill v. Algor, 85 F. Supp. 2d 391, 404-06 (D.N.J. 2000) (granting summary judgment where
arrestee-plaintiff could not identify which officers allegedly entered his cell and beat him (citing
Anela)); see also Combs v. Wilkinson, 315 F.3d 548, 557-58 (6th Cir. 2002) (affirming summary
judgment on excessive force claim by death row inmate who was allegedly attacked by officers
in riot gear because he was unable to identify his attackers; and noting that holding supervisors
responsible, without more, would result in impermissible respondeat superior liability); Skover v.
Titchenell, 408 F. Supp. 2d 445, 451 (E.D. Mich. 2005) (granting summary judgment where
plaintiff could not identify which officer during course of search warrant execution allegedly
pushed his head into kitchen table (citing Combs; Anela; Hill)).

These principles largely control the result in each of the cases presently before the Court.

### A.     Kenneth Watford, Civ. No. 08-0146

In the matter of Kenny Watford, the Court has received no challenge by him to either the
Supervisor Opinion or to the Special Master Opinion/Report of May 12, 2008.  Thus the Court
must accept the findings of fact and the legal conclusions therein as against Watford.  See Civ.
No. 97-5127, Doc. No. 958-1 at ¶ 4 (Special Master Agreement).  Having done so, the Court can
surmise no basis on which Defendants' Motion to strike the award of punitive damages can be
denied.  Watford failed to establish any personal liability as to any specific Defendant for the
attack, and thus there is no non-supervisor party for liability to attach to.  See, e.g., Anela, 790
F.2d at 1068.  His only source for recovery then is the Supervisor Defendants, but as determined
by Special Master Bissell, they are not liable for punitive damages.  Having received no
challenge to that conclusion from Watford, the Court therefore must grant Defendants' Motion

and shall strike the punitive damages award from the Special Master Opinion/Report of May 12, 2008 (Civ. No. 08-0146, Doc. No. 7).  Further, the Court hereby adopts the Special Master Opinion/Report in all other respects, and enters judgment in the amount of $8000 in favor of Kenneth Watford for compensatory damages.

### B. George Alvarez, Civ. No. 08-0330

The same result must also be reached as to George Alvarez.  Alvarez did not establish, nor did Special Master Bissell find, that any individual Defendant was responsible for his attack.  Thus his only recourse is against the Supervisor Defendants.

Notwithstanding, Alvarez challenges in his opposing Motion that the Special Master overlooked evidence that should have created liability for Lt. Coughlan as a direct participant in Alvarez's attack.  See Civ. No. 08-0330, Doc. No. 7 at 2.  (Notably he does not challenge the Supervisor Opinion, but the Opinion/Report of November 12, 2009.  See Civ. No. 08-330, Doc. No. 7 at 2.)  But as Defendants rightly point out, Plaintiff's challenge is an impermissible attempt to ask this Court to sit in review of the findings of fact.  Even assuming that this purported evidence against Coughlan was presented in Alvarez's individual proceeding, which seems in doubt, Alvarez is asking this Court to review the factual findings for "clear error."  See Fed. R. Civ. P. 53(f)(3)(A).  This type of review was expressly foreclosed by agreement of the parties in the Special Master Agreement, wherein the parties agreed that Special Master Bissell's findings would be binding.  See Civ. No. 97-5127, Doc. No. 958-1 at ¶ 4.  The Court shall not now unwind a freely entered-into agreement on the basis of some evidence that may or may not have been presented, and which Alvarez now wishes to emphasize.  Therefore, the Court will grant Defendants' Motion and shall strike the punitive damages award from the Special Master

Opinion/Report of November 12, 2009 (Civ. No. 08-0330, Doc. No. 5), and will deny Plaintiff

Alvarez's Motion.  Further, the Court hereby adopts the Special Master Opinion/Report in all

other respects, and enters judgment in the amount of $4500 in favor of George Alvarez for

compensatory damages.

     **C.**    **John Marchetti, Civ. No. 08-1271**

For the reasons expressed above regarding Kenny Watford, Defendants' Motion is

granted in the Marchetti matter, and the Court shall strike the punitive damages award from the

Special Master Opinion/Report of October 28, 2009 (Civ. No. 08-1271, Doc. No. 5).  Further, the

Court hereby adopts the Special Master Opinion/Report in all other respects, and enters judgment

in the amount of $5000 in favor of John Marchetti for compensatory damages.

     **D.**    **Lawrence Brown, Civ. No. 08-2947**

The result as to Lawrence Brown is somewhat different from those above and the

remaining one below in that his injury occurred some twenty days after the cut-off point

established for supervisor liability.  Brown does not challenge the cut-off date, but instead insists

that Special Master Bissell had sufficient evidence to find particular Defendants responsible for

his individual attack – namely Defendants Whildin and Plummer.  See Civ. No. 08-2947, Doc.

No. 7 at 3-4.  However, as with Plaintiff Alvarez, Plaintiff Brown is really asking this Court to

apply a clearly erroneous standard of review to the Special Master's factual conclusions, which is

foreclosed by the Special Master Agreement.

Moreover, even if the Court were inclined to accept the extraordinary request to review

evidence presented in another proceeding and apply it to Brown's, the Court is not convinced that

the proffered logs are sufficient proof of Whildin's and Plummer's liability.  As with the logs in

16

Anela, 790 F.2d at 1068, the logs here alone do not show who in particular attacked Brown.  It is simply not enough for liability to say that these two Defendants were around, and thus they must have engaged in the attack.  Cf. Hill, 85 F. Supp. 2d at 406 (finding evidence that particular defendant was with the plaintiff sometime after the alleged beating in his cell and evidence disputing officer's testimony as to whether plaintiff was bleeding did not establish that defendant more likely than not was the one responsible for assault).  Therefore, the Court must deny Plaintiff's Motion.  Furthermore, because Brown has not challenged the liability cut-off date for the Supervisor Defendants, and since his attack occurred after September 3, 1997, and since he cannot establish any individual liability, the Court must grant Defendants' Motion and shall dismiss the award of compensatory damages in the Special Master Opinion/Report of October 3, 2008 (Civ. No. 08-2947, Doc. No. 5).  The Court hereby enters judgment in favor of Defendants and awards Lawrence Brown no damages.

### E.     John Riley, Civ. No. 08-3526

Finally, with John Riley, the Court is presented with perhaps the most meaningful challenge to Special Master Bissell's decision-making.  Riley insists that supervisor liability should attach to Lt. Coughlan because he "re-enforced, ratified and encouraged" the SOG's behavior and because he persistently overcame the local administrator's orders to not send SOG officers to the Farm.  See Civ. No. 08-3526, Doc. No. 7 at 4.  However, even assuming that Special Master Bissell's decision that Coughlan does not bear supervisor liability is a legal conclusion, rather than a factual finding, Riley did not present any evidence to convince the Court that supervisor liability should attach.

As this Court has previously stated:

It is well settled that "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson, 454 U.S. 312, 325 (1981) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  Rather, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Given this backdrop, the Third Circuit has set forth a four-part test for determining supervisory liability for an alleged Eighth Amendment violation:

Under this regime, to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.

Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir.2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989)).  This test embodies the Supreme Court's requirement that a plaintiff show that a supervisor acted with "deliberate indifference" in order to set forth a violation under § 1983.  Farmer v. Brennan, 511 U.S. 825 (1994).  Alternatively, the Third Circuit has further held that supervisory liability can be established if a plaintiff can show that a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir.2004).

As the Supreme Court made clear in Farmer, for purposes of alleging supervisory liability, "it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Farmer, 511 U.S. at 843.  Moreover, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.  However, "[t]he knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol, 256 F.3d at 133.

In re Bayside Prison Litig., Civ. No. 97-5127, 2007 WL 327519, at *4-5 (D.N.J. Jan. 30, 1997).

In the context of these principles, the Court is not persuaded that Lt. Coughlan bears supervisor liability for the attack on John Riley.  The only support Riley provides is the Special Master Opinion/Report in the matter of Patrick Feighan.  See Civ. No. 08-3526, Doc. No. 7, Ex.

18

B (Special Master Opinion/Report of October 1, 2008, Civ. No. 08-1298, Doc. No. 4).  However, that Opinion/Report merely suggests Coughlan's involvement in the Feighan attack.  It does not show that he directly participated in the violation of Riley's rights, or that he was a policymaker guilty of creating an unreasonable risk of injury.  In sum, Riley has provided nothing to show that Coughlan bears any liability for Riley's attack, either personally or in a supervisory capacity.

Therefore, for the reasons expressed above, the Court will grant Defendants' Motion and shall strike the punitive damages award from the Special Master Opinion/Report of December 12, 2008 (Civ. No. 08-3526, Doc. No. 4), and will deny Plaintiff Riley's Motion.  Further, the Court hereby adopts the Special Master Opinion/Report in all other respects, and enters judgment in the amount of $8000 in favor of John Riley for compensatory damages.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motions are all **GRANTED** and Plaintiffs' Motions are all **DENIED**.  The Court shall adopt the respective Special Master Opinion/Reports in all other respects and shall enter judgment as follows: 1) $8000 in favor of Kenneth Watford for compensatory damages, 2) $4500 in favor of George Alvarez for compensatory damages, 3) $5000 in favor of John Marchetti for compensatory damages, 4) in favor of Defendants and against Lawrence Brown, and 5)  $8000 in favor of John Riley for compensatory damages.  Appropriate Orders shall follow.

Date:   September 17, 2010                          s/Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge